IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LIPPERT COMPONENTS, INC.,          )
                                   )
                Plaintiff,         )
                                   )
        v.                         )          C.A. No. 06-762-JJF
                                   )
DEXTER CHASSIS GROUP, INC.,        )
                                   )
                Defendant.         )

**PLAINTIFF LIPPERT COMPONENTS, INC.'S**
**RESPONSE BRIEF ON CLAIM CONSTRUCTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
*Attorneys for Plaintiff Lippert Components, Inc.*

OF COUNSEL:

Dean A. Monco
Brad R. Bertoglio
WOOD PHILLIPS
500 West Madison Street
Suite 3800
Chicago, IL  60661-2562
(312) 876-1800

October 5, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................2

I.     DEXTER'S PROPOSED CONSTRUCTION OF THE TERM "SLIDE" RELIES ENTIRELY ON INAPPOSITE EXTRINSIC EVIDENCE WHILE IGNORING OVERWHELMING INTRINSIC EVIDENCE OF THAT TERM'S MEANING TO A PERSON OF ORDINARY SKILL IN THE ART ..................................................2

     A.     Dexter's General-Usage Dictionaries Are Of Little Use In View Of The Overwhelming Contemporaneous and Prior Art-Specific Evidence Of The Meaning Of The Term "Slide" ..................................................................................................3

     B.     To The Extent They Are Considered At All, Dexter's General-Usage Dictionaries Are Completely Neutral ................................5

     C.     Dexter's Citations To The '715 Patent Specification Support LCI ..................................................................................................6

     D.     Dexter Seeks To Import A "Stationary Surface" Limitation Into The Patent Claims That Dexter Has Crafted From Whole Cloth ...........................................................................................8

II.     MOVEABLE MEMBER ..............................................................................9

     A.     Dexter's Reliance on Mas-Hamilton Is Misplaced .....................9

     B.     Section 112 Definiteness Requirements Do Not Compel Interpretation Of "Moveable Member" As A Means-Plus-Function Element ..................................................................................12

CONCLUSION ..................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Alloc, Inc. v. ITC,*
    342 F.3d 1361 (Fed. Cir. 2003)...................................................................... 9

*Al-Site Corp. v. VSI Int'l, Inc.,*
    174 F.3d 1308 (Fed. Cir. 1999)......................................................... 9, 11, 12

*Bancorp Services, L.L.C. v. Hartford Life Ins. Co.,*
    359 F.3d 1367 (Fed. Cir. 2004).................................................................... 12

*CCS Fitness v. Brunswick Corp.,*
    288 F.3d 1359 (Fed. Cir. 2002)...................................................................... 9

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
    469 F.3d 1005 (Fed. Cir. 2006)...................................................................... 9

*Gemstar-TV Guide Intern., Inc. v. ITC,*
    383 F.3d 1352 (Fed. Cir. 2004)...................................................................... 7

*Kwik Products, Inc. v. National Express, Inc.,*
    179 Fed. Appx. 34 (Fed. Cir. 2006)............................................................... 9

*Laitram Corp. v. Rexnord, Inc.,*
    939 F.2d 1533 (Fed. Cir. 1991)................................................................... 10

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004)....................................................................... 7

*Lighting World, Inc. v. Birchwood Lighting, Inc.,*
    382 F.3d 1354 (Fed. Cir. 2004).............................................................. 10, 11

*Mas-Hamilton Group v. LaGard, Inc.,*
    156 F.3d 1206 (Fed. Cir. 1998).............................................................. 10, 11

*Morton Int'l, Inc. v. Cardinal Chem. Co.,*
    5 F.3d 1464 (Fed. Cir. 1993)....................................................................... 12

*Multiform Desiccants, Inc. v. Medzam, Ltd.,*
    133 F.3d 1473 (Fed. Cir. 1998)..................................................................... 3

*Newell Window Furnishings, Inc. v. Springs Window Fashions Div., Inc.,*
    1999 WL 1077882 (N.D. Ill. October 7, 1999) ............................................ 13

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)......................................................... 2, 3, 6

*Resonate Inc. v. Alteon Websystems, Inc.*,
    338 F.3d 1360 (Fed. Cir. 2003)............................................................ 1

*Systems Div., Inc. v. Teknek LLC*,
    59 Fed. Appx. 333 (Fed. Cir. 2003) ..................................................... 10

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*,
    279 F.3d 1357 (Fed. Cir. 2002)............................................................ 4

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)............................................................ 7

*Trustees of the Chicago Truck Driver's Pension Fund v. Leaseway
    Transportation Corp.*,
    76 F.3d 824 (7th Cir. 1996) ............................................................... 6

*Vanderlande Indus. Nederland BV v. ITC*,
    366 F.3d 1311 (Fed. Cir. 2004).............................................................. 3

<u>Statutes</u>

35 U.S.C. § 112..................................................................................... 9, 12, 13

<u>INTRODUCTION</u>

Rather than determining the meaning of the '715 patent claims to a person of ordinary skill in the pertinent art, Dexter has decided what limitations it needs to read into the claims to escape infringement, and then presented arguments having no basis in fact or law to justify its imposition of those unstated limitations into the claims. In so doing, Dexter ignores the commonly accepted industry understanding of disputed terms, as reflected in, for example, contemporaneous patents and Dexter's own documents, in favor of carefully excerpted, generic definitions from general-usage dictionaries. Dexter argues that common terms become suddenly indefinite when joined together in a patent claim, and attempts to employ specialized rules of claim construction out of context. As a result, Dexter propounds a claim construction utterly at odds with the intrinsic and extrinsic evidence pertinent to the technology of the '715 patent.

However, common sense and controlling legal standards prevail during claim construction. The claims of the patent as written and subsequently allowed by the USPTO define the patentee's right to exclude, and the Court should reject Dexter's attempt to modify that right *ex post facto* by importing unstated limitations into the claims for the avowed purpose of avoiding infringement. That is why the Federal Circuit has mandated a "heavy presumption" that claim terms mean what they say and that the written description cannot be used to narrow the chosen claim language. *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1364-65 (Fed. Cir. 2003) ("A particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment."). This Court should not countenance Dexter's attempt to re-write the '715 patent, long after it was issued by the USPTO.

<u>ARGUMENT</u>

I.     DEXTER'S PROPOSED CONSTRUCTION OF THE TERM
       "SLIDE" RELIES ENTIRELY ON INAPPOSITE EXTRINSIC
       EVIDENCE    WHILE    IGNORING    OVERWHELMING
       INTRINSIC EVIDENCE OF THAT TERM'S MEANING TO A
       PERSON OF ORDINARY SKILL IN THE ART

       The goal of claim construction is to determine the meaning of the patent claims to a person of ordinary skill in the pertinent art.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).   However, in its proposed claim construction of the term "slidably mounted" and other claim terms based on the word "slide," Dexter relies largely on carefully-selected portions of general-usage dictionaries -- evidence that is not only extrinsic, but not even arising within the relevant context of RV components.  Meanwhile, other portions of those same dictionaries support LCI's proposed construction.  Even more importantly, all of the evidence <u>within the pertinent art</u>, both intrinsic and extrinsic, supports LCI's proposed construction. Illustrative of Dexter's strategic reliance on interpretations from unrelated fields is the "analogy game" played by Dexter in the opening passages of its brief.  (*See* DOBr. at 3.)[1]

       In attempting to argue that rolling and sliding are purportedly "two different types of motion," Dexter argues that the Court should consider common vernacular, such as runners sliding into second base, or logs rolling down hills.  However, LCI submits that in the context of a slide-out room, a much more apt analogy would be another type of slide-out compartment, such as a common file drawer or desk drawer.  File drawers and desk drawers "slide" open and shut, with those drawers mounted on roller mechanisms -- like the parties' commercial

---

[1]        References to Dexter Chassis Group, Inc's Opening Claim Construction Brief (D.I. 25) appear as "DOBr at __."  References to Lippert's Opening Brief on Claim Construction (D.I. 27) appear at "LOBr at __."  References to exhibits to Lippert's Opening and Response Briefs on Claim Construction appear as "Ex. __," as the exhibits are numbered consecutively and uniquely amongst the two briefs.

embodiments of the patented and accused products.  Not surprisingly, it is this sliding desk drawer analogy (not logs or baserunners) that appears in the ***intrinsic record*** of the '715 patent. (*See* Ex. 4, *Vitalini*, U.S. Patent No. 3,512,315, at 5:18-29 ("A movable flooring . . . can now be slidably mounted relative to the static supporting structure of FIG. 1 in a manner somewhat analogous to a ***sliding desk drawer***....  According to this invention, a novel ***fixed roller means 14*** provides a low friction support for the movable flooring at the front end of the static support structure.") (emphasis added).)[2]

A.     Dexter's General-Usage Dictionaries Are Of Little Use In View Of The Overwhelming Contemporaneous and Prior Art-Specific Evidence Of The Meaning Of The Term "Slide"

Unlike Dexter, courts have long recognized the danger of blind reliance on general-usage dictionaries to construe patent claims.  *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998).   To the extent a person skilled in the pertinent art would attach a different meaning to a term, "general-usage dictionaries are rendered irrelevant with respect to that term; **a general-usage dictionary cannot overcome credible art-specific evidence of the meaning or lack of meaning of a claim term.**"  *Vanderlande Indus. Nederland BV v. ITC*, 366 F.3d 1311, 1321 (Fed. Cir. 2004) (finding general-usage dictionary definition of "glide" to be irrelevant) (emphasis added) (cited with approval in *Phillips*, 415 F.3d at 1322).

In this case, there is extensive intrinsic and art-specific extrinsic evidence that in the context of RV slide-out rooms, the term "slide" refers to smooth continuous movement of one component relative to another, regardless of the mechanism used to facilitate the sliding

---

[2]     Reference is to Exhibit 4.  Exhibits 1-11 are attached to Lippert's Opening Brief on Claim Construction (D.I. 27 and 28).  Exhibits 12-14 referenced herein are attached to this Responsive Brief.

movement.  In its Opening Brief, Lippert cited to no less than ***six issued patents*** directly relating to slide mechanisms in which the patentee used the term "slide" to refer to movement facilitated by rollers.  (LOBr. at 13-14.)

Moreover, two of the prior art patents, *Vitalini*, U.S. Patent No. 3,512,315 and *DiBiaggio*, U.S. Patent No. 5,620,224, are intrinsic evidence.[3]  The *Vitalini* and *DiBiaggio* patents were both cited by an examiner at the U.S. Patent and Trademark Office in a preliminary rejection of the '715 patent claims.  (Ex. 12, Office Action of October 10, 1997, at 2-3.) Notably, both *Vitalini* and *DiBiaggio* disclose mechanisms using rollers, which are described in the patents as enabling a sliding movement.  (*See, e.g., Vitalini*, Ex. 4 at 5:18-21, 5:75-6:2, 8:47-49 (movable flooring is "slidably mounted" relative to the static supporting structure via roller bearing means 14); *DiBiaggio,* Ex. 5 at 2:40-45 ("A **roller** 66, rigidly attached to the trailer frame 62, is disposed between wall end 60w and the interior end 60i of the frame 60 **for slidably supporting** the frame 60." (emphasis added)).  The Patent Examiner in charge of the application for the '715 patent understood that these prior art roller mechanism patents fall within the "slidably mounted" limitation of '715 patent claim 1 (Ex. 12 at 2), and the Applicant never suggested otherwise (Ex. 13, Amendment dated December 22, 1997).

Other art-specific evidence also contradicts Dexter's proposed construction of the term "slidably mounted."  Perhaps most telling, Dexter's own technical documents refer to the accused product as a "slide assembly" despite its use of rollers to facilitate movement of the moveable member relative to a stationary member.  (Ex. 10.)  General industry literature reflects

---

[3]     "Prior art cited in the prosecution history falls within the category of intrinsic evidence." *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1371 n.4 (Fed. Cir. 2002)

a similarly broad understanding of the term "slide" as including roller-based mechanisms. (Ex. 3.)

Thus, the art-specific evidence clearly demonstrates that the meaning of terms such as "slide" "slidably mounted," and "slidably attached" include smooth continuous movement, regardless of whether it is facilitated by rollers.

**B.    To The Extent They Are Considered At All, Dexter's General-Usage Dictionaries Are Completely Neutral**

Dexter's general-usage dictionaries are not only rendered irrelevant by the overwhelming art-specific evidence cited by LCI, but they also include meanings which <u>directly support LCI</u>.  For example, the Random House Unabridged Dictionary (2d ed.), cited by Dexter, includes a definition of slide as "3. to glide or pass smoothly," which is wholly consistent with LCI's proposed construction of "slidably mounted" as meaning "attached in a manner that permits smooth, continuous movement of a moveable member with respect to a stationary member."  (DOBr. Ex. F.)[4]  Each of the other dictionaries cited by Dexter for the meaning of "slide" also includes a definition that supports LCI's proposed construction.  (*See, e.g.,* The American Heritage Dictionary of the English Language, DOBr. Ex. G ("3.  To pass smoothly and quietly; glide"); Webster's Encyclopedic Unabridged Dictionary of the English Language, DOBr. Ex. H ("3. to glide or pass smoothly.  4. to slip easily, quietly, or unobtrusively on or as if on a track, channel, or guide rail. . . ."); Webster's New Twentieth Century Dictionary of the English Language Unabridged, DOBr. Ex. I ("3. to move quietly and smoothly; to glide.").)

With Dexter's own general-usage dictionaries supporting both Dexter's and LCI's proposed constructions equally, they are at most neutral in determining the proper construction

---

[4]    Reference is to Dexter's Exhibit F.  Reference to Exhibits A-K are attached to Dexter Chassis Group, Inc's Opening Claim Construction Brief (D.I. 25).

of the term "slidably mounted" in the context of the '715 patent invention.[5]  Against that backdrop, the commonly accepted usage within the relevant industry of the term "slide" to describe smooth continuous movement, whether assisted by rollers or not, clearly refutes Dexter's proposed construction.

The Federal Circuit has warned that "[i]ndiscriminate reliance on definitions found in dictionaries can often produce absurd results. . . ."  *Phillips v. AWH*, 415 F.3d 1303, 1322 (Fed. Cir. 2005) (en banc) (internal citations omitted).  LCI respectfully submits that reliance on a general-usage dictionary to arrive at a construction of the term "slide" that contradicts the '715 patent specification, the intrinsic and extrinsic prior art, and usage of that term by both parties' own engineers and manufacturing personnel, would indeed be an absurd result.

C.    Dexter's Citations To The '715 Patent Specification Support LCI

As with the general-usage dictionaries, the '715 patent specification also supports LCI's proposed construction – including the passages expressly cited by Dexter, as well as others.

Dexter cites to three passages within the '715 patent specification which use the term "slidably mounted" or "slidably secured." (DOBr. at 9-11.)  In all three instances, the terms are used in a way that could be consistent with either party's proposed construction.  This is

---

[5]    While the dictionary definitions cited by Dexter are generally listed first amongst numerous entries, and the entries supporting LCI are listed third, "the relative order of the common dictionary definitions of a single term does little to clarify that term's meaning within a particular context.  When a word has multiple definitions, usage determines its meaning."  *Trustees of the Chicago Truck Driver's Pension Fund v. Leaseway Transportation Corp.*, 76 F.3d 824, 828 n.4 (7th Cir. 1996).  "A claim should not rise or fall based on the preferences of a particular dictionary editor . . . to rely on one dictionary rather than another."  *Phillips*, 415 F.3d at 1322.

hardly surprising, as the '715 patent preferred embodiment includes a moveable member that moves smoothly and continuously relative to a stationary member (LCI's proposed construction), while maintaining constant contact (Dexter's proposed construction).   Thus, these passages standing alone are not revealing of a proper claim construction.

However, even if the '715 patent disclosed no other type of slidable movement other than constant contact with a stationary surface (which it does, as described below), the Federal Circuit has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. *Gemstar-TV Guide Intern., Inc. v. ITC*, 383 F.3d 1352, 1366 (Fed. Cir. 2004).  "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."  *Id.* (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

Dexter's only other reference to the '715 patent specification relies on a tortured misinterpretation of the patentee's indication that the term "slidable" should be ***broadly construed***.  Dexter refers to col. 8, lines 26-32 of the '715 patent, which state that:

> Further, it is foreseen that the slide-out mechanism 19 **could comprise a wide variety of structure** [sic] in which one member is stationary and a second member, to which slide-out room 2 is to be attached, is mounted for slidable movement relative to the stationary member, such as a tube within a tube **or other systems known in the art or which may be hereafter developed**.

(Emphasis added.)   Dexter erroneously limits this passage to expand the scope of slidable movement <u>only</u> to tube within a tube systems.   (DOBr. at 11-12.)   However, the applicant expressly contemplated more.  The above language broadened the scope of "slidable movement"

to include not just a tube within a tube, but also "other systems known in the art." The applicant then promptly disclosed what it understood to be the "other systems known in the art" through submission of an Information Disclosure Statement, citing numerous prior art patents. (*See* Ex. 14, Information Disclosure Statement dated November 18, 1996, filed simultaneously with the application for the '715 patent.) Those patents included disclosure of roller-based structures.[6] (DOBr. Exs. B, D and E (prior art disclosing the state of the art as including roller-based slide mechanisms.))

Since the '715 patent applicant expressly indicated that "slidable movement" should be construed broadly to include other systems known in the art, and that same applicant simultaneously identified roller-based systems as being "known in the art," Dexter's attempt to expressly exclude roller-based systems from the scope of "slidable movement" directly contradicts the express teachings of the '715 patent.

D.    Dexter Seeks To Import A "Stationary Surface" Limitation Into The Patent Claims That Dexter Has Crafted From Whole Cloth

Further illustrating the impropriety of Dexter's proposed narrow construction of "slidably mounted," "slide plate," "slideably advanceable" and related terms, is Dexter's reliance on the otherwise unstated concept of a "stationary surface." Specifically, Dexter argues that "slide" means "to move along in constant contact with *a stationary surface*." (DOBr. at 14.) (Emphasis added.) Similarly, Dexter argues that "slide plate" should be construed to mean "a plate that moves along in constant contact with *a stationary surface*." (DOBr at 15.)

---

[6]    Dexter itself admits that the '715 patent applicant disclosed roller-based slide mechanisms as being within the state of the art at the time the application was filed. (DOBr. at 12.)

Notably, the term "stationary surface" does not appear anywhere within the '715 patent. It is a term first introduced by Dexter in its opening brief. The only use of the term "surface" within the '715 patent at all is in reference to portions of the sill of the slide-out opening – and none of those references addresses a conception of a "stationary" surface. The fact that the '715 patent describes embodiments of the claimed invention in detail, without any reference to a "stationary surface" of a rail or component, demonstrates the incongruity of inserting that term as an express limitation of the patent claims.

LCI submits that Dexter was compelled to coin the term "stationary surface" in an *ex post facto* effort to avoid infringement. Without this additional, unclaimed limitation, even a narrow construction of "slide" as requiring "constant contact" with a "stationary member" would fail to exculpate Dexter from its infringement of the '715 patent, since Dexter's rollers are part of a stationary member and maintain constant contact with the associated moveable member. Therefore, Dexter's thinly-veiled effort at avoiding infringement requires construction of the '715 patent to require not just constant contact, but constant contact with a stationary "surface." Unfortunately for Dexter, the concept of a "stationary surface" is foreign to the '715 patent, and has no place in a proper claim construction.

II.     MOVEABLE MEMBER

A.     Dexter's Reliance on *Mas-Hamilton* Is Misplaced

As discussed in LCI's Opening Brief, the Federal Circuit has repeatedly ruled that claim terms utilizing the word "member" are not subject to construction as a means-plus-function limitation under 35 U.S.C. § 112, ¶ 6. *See, e.g., CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005 (Fed. Cir. 2006); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1380 (Fed. Cir. 2003) (dissent, addressing issue not reached by

majority opinion).  Numerous other decisions of the Federal Circuit have expressly used the term "member" to recite structure in construing claims.  *See, e.g., Kwik Products, Inc. v. National Express, Inc.*, 179 Fed. Appx. 34 (Fed. Cir. 2006); *Systems Div., Inc. v. Teknek LLC*, 59 Fed. Appx. 333, 336 (Fed. Cir. 2003); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1536 (Fed. Cir. 1991).

Against this overwhelming majority precedent, Dexter relies on a single case in which a claim term including the word "member" was construed as a means-plus-function element: *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998).  However, *Mas-Hamilton* is easily distinguishable from the present case.

In *Lighting World, Inc. v. Birchwood Lighting, Inc.*, the Federal Circuit explained that the *Mas-Hamilton* decision on which Dexter relies "provides a useful illustration of how **unusual** the circumstances must be to overcome the presumption that a limitation lacking the word "means" is **not** in means-plus-function form."  382 F.3d 1354, 1362 (Fed. Cir. 2004) (emphasis added).  For example, in *Mas-Hamilton*, the prosecution record of the patent-in-suit showed that the patentee had used the terms "member" and "means for" interchangeably. *Lighting World*, 382 F.3d at 1362-63.  In the '715 patent, that is not the case.  (*See* Ex. 1.)

Also, in *Mas-Hamilton*, the Court determined that there was no evidence that the term "member" had any structural meaning to a person of ordinary skill in the art.  *Mas-Hamilton,* 156 F.3d at 1214-15.  However, in this case, "member" is used repeatedly as a structural term, by both the '715 patent applicant and by others of skill in the art.  For example, in the '715 patent, "member" is used repeatedly to refer to structural components of the illustrated device.  (*See, e.g.,* Ex. 1 at 2:32, 2:40, 2:45, 2:48, 4:10, 5:4, 5:10, 5:15, 8:28, 8:30, 8:38, 8:50-51, 8:55 (referring to structures as "stationary member," "retractable member,"

11.

"slidable member," "support member," "slide member 23," "frame member 14," and "angle member 66.")) A term should not be construed as invoking Section 112, ¶ 6 where that term is used in the patent's written description as a name for structure. *Lighting World,* 382 F.3d at 1361.

Others of skill in the pertinent art also view "member" as a structural term. For example, the *DiBiaggio* prior art patent (which is part of the ***intrinsic record*** of the '715 patent) describes a "leveling means" in functional terms, and then defines the ***structure*** which corresponds to the leveling means by stating, "[i]n one embodiment, the leveling means comprises a frame ***member*** . . . ." (Ex. 5, Abstract lines 11-12 (emphasis added).) Like the '715 patent, the *DiBiaggio* patent also repeatedly uses the term "member" to refer to structural components, throughout the patent's written description. (*See, e.g.,* Ex. 5, *passim* references "frame member," "seal member," "tubular member," "ramp member," "bulb member," "channel member," and "cam member.") Indeed, the Detailed Description of the Preferred Embodiment section of *DiBiaggio* alone uses the term "member" over ***forty (40) times***. Other patent references also demonstrate the structural significance of the term "member" to a person of ordinary skill in the pertinent art through repeated use in reference to structural components. (*See, e.g.,* Ex. 4, *Vitalini*, U.S. Patent No. 3,512,315 (intrinsic evidence, using on over 35 occasions terms such as "rail members," "structural members," "concrete members," "flooring members," "screw member," "nut member," "channel members").)

The '715 patent "moveable member" further differs from the means-plus-function limitation in *Mas-Hamilton* because the "moveable member" limitation itself recites structure. For example, in claim 1, the structure of the moveable member limitation is described as being "**slidably mounted relative to said stationary member**." (Ex. 1, 9:5-6.) In *Al-Site Corp. v.*

*VSI Int'l, Inc.*, the Federal Circuit held the similar language "**attachable to a portion of said frame**" as reciting sufficient structure to preclude treatment under Section 112, ¶ 6.  174 F.3d 1308, 1319 (Fed. Cir. 1999).  Claim 1 provides yet further structural definition through its indication that the slide-out room is attached to the moveable member.  (Ex. 1, 9:6-7) *compare to Al-Site Corp.*, 174 F.3d at 1319 (claim language "having an attaching portion attachable to a portion of said frame of said eyeglasses" precludes "eyeglass contacting member" from being construed as a means-plus-function limitation).

In view of the overwhelming intrinsic and art-specific evidence of the meaning of the term "member" to a person of ordinary skill in the art, Dexter's suggestion that the term "member" has no structural meaning, such that it would have to be interpreted under 35 U.S.C. § 112, ¶ 6, is untenable.

B.     Section 112 Definiteness Requirements Do Not Compel Interpretation Of "Moveable Member" As A Means-Plus-Function Element

Dexter argues that the term "moveable member" should be construed as a means-plus-function element because the term is purportedly indefinite standing alone, thus rendering the '715 patent invalid under 35 U.S.C. § 112.  (DOBr. at 17-18.)  However, Dexter's argument lacks any basis in law or fact.

Without meaningful explanation, Dexter's argument appears to be based on a theory that a claim term, such as "moveable member," is inherently and necessarily indefinite if that precise term is not recited in the patent specification.  (*See* DOBr. at 18.)  However, the test for definiteness is whether a person of ordinary skill in the pertinent art would understand what is claimed, when the claim is ***read in light of*** the specification.  *See, e.g., Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993).  The law does not require that the claim term be used verbatim in the patent specification, but only that the meaning of the claim term be

understood or reasonably inferred by a person of ordinary skill in the art.  *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) (In construing a claim term that does not appear in the specification, stating "[t]he failure to define the term is, of course, not fatal, for if the meaning of the term is fairly inferable from the patent, an express definition is not necessary. . . ."); *Newell Window Furnishings, Inc. v. Springs Window Fashions Div., Inc.*, 1999 WL 1077882, at *29 (N.D. Ill. October 7, 1999) ("Being undefined in the claim or the specifications, the term is given its ordinary and customary meaning.").

Under that proper legal framework, Dexter presents no evidence whatsoever that the term "moveable member" is not readily understood by a person of ordinary skill in the art. To the contrary, the term is merely a combination of two words having plain and readily understood meaning.  Dexter cannot seriously dispute that the word "moveable" would be understood by a person of ordinary skill in the art.  As discussed above in Section II.B.1, "member" is a word commonly used to denote structure, as it is used over sixty (60) times in the '715 patent, and dozens of times elsewhere in the intrinsic record of the '715 patent.  (*See* Ex. 1.) Combining these two common terms together does not suddenly render them incomprehensible to a person of ordinary skill in the art.[7]

---

[7]     Even assuming *arguendo* that the term "moveable member" would not be understood by a person of ordinary skill in the art, there is still no basis for Dexter's suggestion that the term must be interpreted as a means-plus-function limitation under 35 U.S.C. § 112, ¶ 6. Section 112, ¶ 6 controls the interpretation of purely functional claim limitations – not purportedly indefinite ones.

<u>CONCLUSION</u>

For the reasons described herein and in Lippert's Opening Brief on Claim Construction, LCI respectfully submits that the disputed claim elements discussed hereinabove should be construed as proposed by LCI.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm (#1098)*
Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
OF COUNSEL:                                       tgrimm@mnat.com
                                                 *Attorneys for Plaintiff Lippert Components, Inc.*
Dean A. Monco
Brad R. Bertoglio
WOOD PHILLIPS
500 West Madison Street
Suite 3800
Chicago, IL  60661-2562
(312) 876-1800

October 5, 2007
1254972

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2007, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF which will send notification of such filing

to the following:

> Donald J. Detweiler
> Titania R. Mack
> GREENBERG TRAURIG, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were

caused to be served on October 5, 2007 upon the following individuals in the manner indicated:

**BY E-MAIL & HAND DELIVERY**                    **BY E-MAIL**

Donald J. Detweiler                              George G. Matava
Titania R. Mack                                  GREENBERG TRAURIG, LLP
GREENBERG TRAURIG, LLP                           matavag@gtlaw.com
1007 North Orange Street, Suite 1200
Wilmington, DE  19801                            Brian A. Carpenter
detweilerd@gtlaw.com                             GREENBERG TRAURIG, LLP
mackt@gtlaw.com                                  carpenterb@gtlaw.com

                                                 Stephen B. Perkins
                                                 GREENBERG TRAURIG, LLP
                                                 perkinsst@gtlaw.com


                                   */s/ Thomas C. Grimm (#1098)*
                                   Thomas C. Grimm (#1098)
                                   tgrimm@mnat.com

1254972

EXHIBIT 12



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:    COMMISSIONER OF PATENTS AND TRADEMARKS
            Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 087754,872 | 11/22/96 | NEBEL | M | 96.294 |

```
                                    F1M1/1010
┌                                              ┐
    LITMAN MCMAHON & BROWN
    1200 MAIN STREET
    SUITE 1600
    KANSAS CITY MO 64105
```

| EXAMINER |
|---|
| KRAMER, D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3102 | 3 |

DATE MAILED:    10/10/97

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 08/754,872 | Nebel |
| | Examiner | Group Art Unit |
| | Dean J. Kramer | 3102 |

☐ Responsive to communication(s) filed on _____ .

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____3_____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *1-16* _____ is/are pending in the application.

   Of the above, claim(s) _____ is/are withdrawn from consideration.

☒ Claim(s) *13-15* _____ is/are allowed.

☒ Claim(s) *1, 3, 7-9, and 16* _____ is/are rejected.

☒ Claim(s) *2, 4-6, and 10-12* _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☒ The drawing(s) filed on ___*Nov 22, 1996*___ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is   ☐ approved   ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

   ☐ All  ☐ Some*  ☐ None   of the CERTIFIED copies of the priority documents have been

      ☐ received.

      ☐ received in Application No. (Series Code/Serial Number) _____ .

      ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). ___2___

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

Serial Number: 08/754,872                                              Page 2

Art Unit: 3102


1.    Claims 3, 8, and 16 are rejected under 35 U.S.C. 112, second paragraph, as being

indefinite for failing to particularly point out and distinctly claim the subject matter which

applicant regards as the invention.

      There is no clear antecedent basis for "said rail" (claim 3, lines 2 and 3), "said side plate"

(claim 3, line 3), "said vehicle" (claim 8, line 3), or "said support bracket" (claim 16, line 1).

2.    The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

      A person shall be entitled to a patent unless --

      (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or
      on sale in this country, more than one year prior to the date of application for patent in the United States.

      (e) the invention was described in a patent granted on an application for patent by another filed in the United
      States before the invention thereof by the applicant for patent, or on an international application by another who
      has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371© of this title before the invention
      thereof by the applicant for patent.

3.    Claims 1, 3, 7, and 9, as understood, are rejected under 35 U.S.C. 102(b) as being

anticipated by Vitalini.

      Vitalini shows a slide-out room assembly comprising a plurality of stationary rails (3),

means (14,17,18) mounted to a first end of the rails for engaging a top surface of an outer

beam or sill (2), a moveable member (40) slidably mounted relative to the rails, and a drive means

(44-48). In regard to claim 7, one end of each rail is supported on the outermost beam or sill (2)

as shown in Fig. 1, and each rail is also supported "toward a second end thereof" by additional

beams (2) and pillars (1').

Serial Number: 08/754,872                                         Page 3

Art Unit: 3102

4.    Claims 1, 3, 7, and 9, as understood, are rejected under 35 U.S.C. 102(e) as being

anticipated by DiBiagio et al..

The patent to DiBiagio et al. shows an expandable vehicle assembly comprising a

stationary member (64), means (74) mounted proximate a free end of the stationary member for

engaging an upper surface of a sill (shown in cross-section in Figs. 2-4), and a moveable member

(60).

5.    Claims 2, 4-6, and 10-12 are objected to as being dependent upon a rejected base claim,

but would be allowable if rewritten in independent form including all of the limitations of the base

claim and any intervening claims.

6.    Claims 8 and 16 would be allowable if rewritten to overcome the rejection(s) under 35

U.S.C. 112 set forth in this Office action and to include all of the limitations of the base claim and

any intervening claims.

7.    Claims 13-15 are allowed.

8.    The drawings are objected to because section line 4-4 is not shown in Figure 3 as is set

forth in the specification (page 7, line 18).  Correction is required.

9.    The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.  Buland and Dewald, Jr. et al. both show slide-out rooms for vehicles.

Serial Number: 08/754,872                                          Page 4

Art Unit: 3102


10.     Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Dean Kramer whose telephone number is (703) 308-2181.


djk

September 30, 1997

DEAN KRAMER    9-30-97
PRIMARY EXAMINER
GROUP 3100

| *Notice of References Cited* | Application No.<br>08/754,872 | Applicant(s)<br>**Nebel** | | | |
|---|---|---|---|---|---|
| | Examiner<br>**Dean J. Kramer** | Group Art Unit<br>**3102** | | Page 1 of 1 | |

### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|
| A | 3,512,315 | 5-1970 | Vitalini | 52 | 67 |
| B | 3,572,809 | 3-1971 | Buland | 296 | 26 |
| C | 5,577,351 | 11-1996 | Dewald, Jr. et al. | 296 | 171 |
| D | 5,620,224 | 4-1997 | DiBiagio et al. | 296 | 165 |
| E | | | | | |
| F | | | | | |
| G | | | | | |
| H | | | | | |
| I | | | | | |
| J | | | | | |
| K | | | | | |
| L | | | | | |
| M | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

### NON-PATENT DOCUMENTS

| | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|
| U | | |
| V | | |
| W | | |
| X | | |

U. S. Patent and Trademark Office<br>PTO-892 (Rev. 9-95)

**Notice of References Cited**

Part of Paper No. ___3___

EXHIBIT 13

PATENT

#4/a
S. Williams
1/12/98
puoto

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

A M E N D M E N T

Applicant:  Michael W. Nebel

Serial No.:  08/754,872

Filed:  November 22, 1996

Date:  December 22, 1997

Group Art Unit:  3102

Exam:  Dean Kramer

For:  EXTENSION MECHANISM FOR TRAVEL TRAILER SLIDE-OUT ROOMS

- - - - - - - - - - - - - - - - - - - - - - - - -

Kansas City, Missouri

Assistant Commissioner for Patents

Washington, D. C. 20231

Sir:

In response to the examiner's action mailed October 10, 1997, please amend the application as follows:

**IN THE CLAIMS**

Please amend the following claims as noted:

1.    An apparatus for selectively extending and retracting a slide-out room through a slide-out room opening in a wall <u>of a first room, a portion of the wall comprising a sill having an upper surface which defines a lower edge of the slide-out</u>



fee on transmittal sheet

1

Michael W. Nebel .                    Serial ɔ. 08/754,872

   room opening, the sill extending above a floor of the first

room; said apparatus comprising:

(a)  at least one stationary member;

(b)  means mounted proximate a first end of said stationary

     member for engaging [an] the upper surface of [a] the

     sill of the slide-out room opening and supporting said

     first end of said stationary member thereby; and



(c)  a moveable member slidably mounted relative to said

     stationary member and adapted for securement of the

     slide-out room thereto such that the slide-out room may

     be advanced through the slide-out room opening.



3.   The apparatus as in Claim 1 further comprising:

(a)  drive means secured to said [rail] stationary member

     for slidably advancing said [slide plate] moveable

     member relative to said [rail] stationary member.

7.   An apparatus for selectively extending and retracting a

slide-out room through a slide-out room opening in a wall of

a first room, a portion of the wall comprising a sill having

an upper surface which defines a lower edge of the slide-out

room opening, the sill extending above a floor of the first

room; said apparatus comprising:

2

Michael W. Nebel                    Serial  ɔ. 08/754,872

    (a)   at least one rail adapted to be supported proximate a

          first end thereof by [an] <u>the</u> upper surface of [a] <u>the</u>

          sill of the slide-out room opening and extending

          perpendicular thereto;

    (b)   a support member secured to said rail toward a second

          end thereof; and

    (c)   a slide plate slidably mounted to said rail and adapted

          for securement of the slide-out room thereto such that

          the slide out room is slidably advanceable through the

          slide-out room opening.



8.   The apparatus as in Claim 7 wherein:

    (a)   said support member supports said second end of said

          rail above [a] <u>the</u> floor of said [vehicle] <u>first room</u>

          and is height adjustable for adjusting the height of

          said second end of said rail above the floor.

16.   The apparatus as in Claim 13 wherein said [support]

    <u>threshold</u> bracket includes:

    (a)   a horizontally extending rear portion; and

    (b)   a front portion which slopes downward toward a front

          end thereof.

3

Michael W. Nebel                    Serial ɔ. 08/754,872

Please add the following claims:

17.  An apparatus for selectively extending and retracting a
     slide-out room through a slide-out room opening in a wall;
     said apparatus comprising:

     (a)  at least one stationary member;

     (b)  means mounted proximate a first end of said stationary
          member for engaging an upper surface of a sill of the
          slide-out room opening and supporting said first end of
          said stationary member thereby;

     (c)  a moveable member slidably mounted relative to said
          stationary member and adapted for securement of the
          slide-out room thereto such that the slide-out room may
          be advanced through the slide-out room opening; and



     (d)  a height adjustable support member secured to said
          stationary member toward a second end thereof for
          supporting said second end of said stationary member.

18.  An apparatus for selectively extending and retracting a
     slide-out room through a slide-out room opening in a wall;
     said apparatus comprising:

     (a)  at least one stationary member;

     (b)  means mounted proximate a first end of said stationary
          member for engaging an upper surface of a sill of the

                                 4

Michael W. Nebel                    Serial  ɔ. 08/754,872

       slide-out room opening and supporting said first end of
said stationary member thereby; and

(c)   a moveable member slidably mounted relative to said
stationary member and adapted for securement of the
slide-out room thereto such that the slide-out room may
be advanced through the slide-out room opening; and

(d)   a support bracket secured to said first end of said
stationary member; said support bracket having an outer
lip for engaging an outer surface of the wall and an
inner lip for engaging an inner surface of the wall.

19.  The apparatus as in Claim 18 wherein:

(a)   said support bracket spans the width of the slide-out
room opening.

20.  The apparatus as in Claim 19 wherein said support bracket
includes:

(a)   a horizontally extending rear portion; and

(b)   a front portion which slopes downward toward a front
end thereof.

21.  An apparatus for selectively extending and retracting a
slide-out room through a slide-out room opening in a wall;
said apparatus comprising:

5

Michael W. Nebel                    Serial  ɔ. 08/754,872

(a)  at least one rail adapted to be supported proximate a
     first end thereof by an upper surface of a sill of the
     slide-out room opening and extending perpendicular
     thereto;

(b)  a support member secured to said rail toward a second
     end thereof;

(c)  a slide plate slidably mounted to said rail and adapted
     for securement of the slide-out room thereto such that
     the slide out room is slidably advanceable through the
     slide-out room opening; and

(d)  said support member supports said second end of said
     rail above a floor of a first room relative to which
     said slide-out room extends and retracts; said support
     member is height adjustable for adjusting the height of
     said second end of said rail above the floor.

22.  An apparatus for selectively extending and retracting a
     slide-out room through a slide-out room opening in a wall;
     said apparatus comprising:

(a)  at least one rail adapted to be supported proximate a
     first end thereof by an upper surface of a sill of the
     slide-out room opening and extending perpendicular
     thereto;

6

Michael W. Nebel                    Serial  ɔ. 08/754,872

(b)   a support member secured to said rail toward a second
      end thereof;

(c)   a slide plate slidably mounted to said rail and adapted
      for securement of the slide-out room thereto such that
      the slide out room is slidably advanceable through the
      slide-out room opening; and

(d)   a support bracket secured to said first end of said
      rail; said support bracket having an outer lip for
      engaging an outer surface of the wall and an inner lip
      for engaging an inner surface of the wall.

23.  The apparatus as in Claim 22 wherein:

(a)   said support bracket spans the width of the slide-out
      room opening.


24.  The apparatus as in Claim 23 wherein said support bracket
     includes:

(a)   a horizontally extending rear portion; and

(b)   a front portion which slopes downward toward a front
      end thereof.

7

Michael W. Nebel                    Serial No. 08/754,872

## REMARKS

Applicant has received the examiner's action mailed October 10, 1997, and notes with appreciation the allowance of Claims 13-15, and the indication that Claims 2, 4-6, 8, 10-12 and 16 contain allowable subject matter. Reconsideration of the remaining claims is respectfully requested in view of the above amendments and the remarks below.

Claims 3, 8 and 16 were rejected under 35 U.S.C. § 112, second paragraphs being indefinite due to lack of antecedent basis of various elements. Appropriate corrections have been made to Claims 3, 8 and 16 and it is urged that Claims 3, 8 and 16 are now clear and definite.

Claims 1, 3, 7 and 9 were rejected under 35 U.S.C. § 102(b) as being anticipated by Vitalini. Examiner maintains that Vitalini shows "means (14, 17, 18) mounted to a first end of the [stationary] rails for engaging a top surface of an outer beam or sill (2)..." However, as best seen in Fig. 5 of Vitalini, roller means 14 (as well as components 17 and 18) are not mounted to the end of the beams or rails 3. Although roller means 14 and beams 3 are supported by beam 2 they are done so separately. In fact, as noted in Vitalini begining on line 29 of column 5, the front end 15 of beam 3 is cut back to accomodate the roller means 14. Roller means 14 supports the movable flooring 40 and not the

8

Michael W. Nebel                        Serial ɔ. 08/754,872

stationary rails or beams 3 such that the disclosure of Vitalini does not anticipate Claims 1, 3, 7 and 9.

Further, beam 2 of Vitalini does not comprise a sill as argued by the Examiner. As noted in the specification of the present application, the sill generally refers to the portion of the outer wall of a first room which extends above the floor of the first room and an upper surface of which defines a lower edge of the slide-out room opening in the outer wall. Supporting one end of the stationary member or rail by means which engages an upper surface of the sill generally ensures that the slide-out room will be mounted square relative to the slide-out room opening. The beam 2 of Vitalini does not comprise a sill as contemplated by the claims of the present invention. Supporting ends of rails 3 on beam 2 would not ensure that any slide-out room slidably mounted relative to rails 3 would be mounted square relative to any opening in a wall mounted to the framework disclosed in Vitalini. Claims 1 and 7 have been amended to clarify this distinction.

Claims 1, 3, 7 and 9 were rejected under 35 U.S.C. § 102(b) as being anticipated by DiBiagio et al. Applicant is not certain what structure shown in Figs. 2-4 comprises a sill as specified in Claims 1, 3, 7 and 9. For similar reasons as noted above, the beam 62, to which the stationary member or rail 64 is attached does not comprise a sill. Mounting an end of the stationary

9

Michael W. Nebel                          Serial No. 08/754,872

member 64 relative to the beam 62 does not ensure that the slide

out room will be mounted square relative to the opening 28 in

sidewall 20.  The DiBiagio et al. patent does not disclose a sill

as contemplated by the claims of the present application.  As

noted above, Claims 1 and 7 have been amended to clarify this

distinction.

Claims 2, 4-6, 8, and 10-12 have been rewritten as new

Claims 17-24.

Applicants have considered the additional prior art cited by

the examiner, but not applied against the claims.  The claims, as

amended, are deemed to be patentable over these references as

well.

In view of the amendments contained herein and the above

remarks, it is respectfully submitted that claims 1-24 are clear

and definite and that they are patentable over the prior art of

record.  Accordingly, the Examiner is requested to issue a notice

of allowance indicating such.

In the event that the Examiner is of the opinion that the

prosecution of this application can be advanced thereby, he is

invited to contact Applicant's attorney at the telephone number

listed below.

10

Michael W. Nebel                          Serial ว. ่8/754,872

                                          Respectfully submitted,

                                          Michael W. Nebel

                                          By LITMAN, McMAHON & BROWN

                                          By _____

KRE:sss                                   Kent R. Erickson

1200 Main, Suite 1600                     Reg. No. 36,793

Kansas City, Missouri 64105                  Attorney

Phone: (816) 842-1590

I hereby certify that this
correspondence is being deposited
with the United States Postal
Service as first class mail in an
envelope addressed to: Box: FEE
AMENDMENT, Assistant Commissioner
for Patents, Washington, D.C.
20231 on December 22, 1997.

        Michael W. Nebel
         (Applicant)

By _____

        December 22, 1997
    _____
        (Date of Signature)

kre\patent\amd\pamdmwn.294

11

EXHIBIT 14

Express Mail TB8275E   )6 US                    08/754872



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

INFORMATION DISCLOSURE STATEMENT

Applicant: Michael W. Nebel

For: EXTENSION MECHANISM FOR TRAVEL TRAILER SLIDE-OUT ROOMS

* * * * * * * * * * * * * * * * * * * * * * * *

                                    Kansas City, Missouri

Assistant Commissioner for Patents
Washington, D. C.  20231

Sir:

        Applicant is aware of the following references listed on the

attached PTO-1449, copies of which are enclosed:

### U. S. Patents

| Patent No. | Inventor | Issue Date |
|---|---|---|
| 2,225,319 | J.E. Rollo | Dec. 17, 1940 |
| 2,606,057 | C.R.L. Johnson | Aug. 05, 1952 |
| 2,820,666 | R.S. Grochmal | Jan. 21, 1958 |
| 4,312,159 | W.A. Paul | Jan. 26, 1982 |
| 4,500,132 | C.T. Yoder | Feb. 19, 1985 |
| RE 32,262 | B.B. Stewart | Oct. 07, 1986 |
| 5,237,782 | D.R. Cooper | Aug. 24, 1993 |
| 5,332,276 | R.W. Blodgett, Jr. | Jul. 26, 1994 |
| 5,333,420 | E.J. Eden | Aug. 02, 1994 |
| 5,491,933 | M.A. Miller | Feb. 20, 1996 |

1

## Other Documents

Drawings of Slideout Mechanism #1, Peterson Industries, Inc., Smith Center, Kansas, showing slide-out mechanism which was on sale and in public use more than one year prior to the filing date of this application.

Drawings of Slideout Mechanism #2, Peterson Industries, Inc., Smith Center, Kansas, showing slide-out mechanism which was on sale and in public use more than one year prior to the filing date of this application.

The above-listed references are, in the belief and opinion of the undersigned, the closest art, that is required to be disclosed under the duty of disclosure, of which the applicant is aware as of the date of execution of the Declaration in the above-captioned application.

Respectfully submitted,

*Nov 18 1996*

Date

*Michael W. Nebel*

Michael W. Nebel, Inventor

2

Express Mail  TB827586496 US

Sheet 1 of 1

| Form PTO-1449  U.S. DEPARTMENT OF COMMERCE (Modified)    PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO.  96,294 | SERIAL NO. 08/754872 |
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | APPLICANT  Michael W. Nebel | |
| (Use several sheets if necessary) | FILING DATE | GROUP 3102 |
| (37 CFR 1.98(b)) | | |

MAIL ROOM NOV 22 1996 TRADEMARK OFF.

**U.S. PATENT DOCUMENTS**  Part of Paper #2

| EXAMINER INITIAL | DOCUMENT NUMBER | DATE | PATENTEE | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| DJK | 2,225,319 | 12/17/40 | J.E. Rollo | | | |
| DJK | 2,606,057 | 08/05/52 | C.R.L. Johnson | | | |
| DJK | 2,820,666 | 01/21/58 | R.S. Grochmal | | | |
| DJK | 4,312,159 | 01/26/82 | W.A. Paul | | | |
| DJK | 4,500,132 | 02/19/85 | C.T. Yoder | | | |
| DJK | RE 32,262 | 10/07/86 | B.B. Stewart | | | |
| DJK | 5,237,782 | 08/24/93 | D.R. Cooper | | | |
| DJK | 5,332,276 | 07/26/94 | R.W. Blodgett, Jr. | | | |
| DJK | 5,333,420 | 08/02/94 | E.J. Eden | | | |
| DJK | 5,491,933 | 02/20/96 | M.A. Miller | | | |

**FOREIGN PATENT OR PUBLISHED FOREIGN PATENT APPLICATION**

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES  NO |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**OTHER DOCUMENTS (including Author, Title, Date, Relevant Pages, Place of Publication)**

| | | |
|---|---|---|
| DJK | | Drawings of Slideout Mechanism #1, Peterson Industries, Inc., Smith Center, Kansas, showing slide-out mechanism which was on sale and in public use more than one year prior to the filing date of this application. (NO DATE) |
| DJK | | Drawings of Slideout Mechanism #2, Peterson Industries, Inc., Smith Center, Kansas, showing slide-out mechanism which was on sale and in public use more than one year prior to the filing date of this application. (NO DATE) |
| | | |
| | | |

| Examiner | Date Considered |
|---|---|

EXAMINER: Initial citation considered. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.